If you'd like, you can wait until the table is clear. 15-24, Linda Richko, attorney representative of the estate of Jeffrey Corbat v. Wayne County, Michigan. Aaron Thomas, attorney representative of the estate of Jeffrey Corbat v. Wayne County, Michigan. April Williams, social worker Larry Cameron, and deputy Andre Stinson. Brandon Gillespie, Good morning to the court. I'm Steve Fishman, and Vince Colella and I represent the plaintiff in this case, and I think Judge Clay will agree with this. I'm a criminal lawyer who generally does trials, and how I happen to be here on my 67th birthday arguing a civil case in front of the Sixth Circuit is an irony I just felt I had to mention to you. Well, happy birthday. Well, thank you very much. I must tell you I heard the same argument from Mr. Thomas in front of Judge Hood that he made in front of you, and I said to Judge Hood and I say to you, those arguments are terrific. If there were three more people besides you three and we had a jury, they're all factual arguments. Stinson isn't really liable, for denying summary judgment. The facts we know are in dispute. I said over and over at the motion hearing, we're arguing about facts, that's why we have juries. What did Judge Hood find, though, and what did she say in her opinion? Her opinion makes fact findings as to every single thing that are issues for a jury to decide, deliberate indifference. They can make the arguments that Mr. Thomas made. We'll make our arguments, the jury will figure it out. There's not any doubt that her fact findings are entitled to deference under Plumhoff. There's not any doubt that we have a clearly established right here under the Wilson versus, I think it's Yaklitsch is the last name, to be free from inmate on inmate violence. There's not any doubt that Judge Hood applied Farmer versus Brennan to discuss the objective and the subjective prongs of the case, and talked about the fact, the Farmer case talks about the fact that very rarely do you find in a police officer, jail deputy situation, people coming forward saying, you know, you're right, I did it, it was my fault, I didn't do what I was supposed to. Why, or what do we do then? The jury has the right, as Judge Hood clearly found, to consider the circumstances and circumstantial evidence and then all the arguments of counsel and we see what the jury does. So, to begin with, I didn't hear anything from Mr. Thomas about why Judge Hood should be reversed. All I heard were fact arguments, and in fact, in his rebuttal argument at the trial court level, Judge Hood interrupted and said, aren't you agreeing with Fishman here? You're saying this fact and that fact, this fact and that fact. The opinion cites case law where it needs to be cited. It makes findings about every defendant, including the county, that are things that could be decided by a jury. There are factual disputes, there's no doubt about it. And I'm submitting to you, there's no basis for the court to turn around and say, well, Judge Hood was wrong. And I haven't heard anything from Mr. Thomas today that says, why was the judge wrong? And that's kind of where I am. And I welcome, I don't mind questions anytime you want, but I really welcome whatever questions there would be about that issue. What has the county presented to say that she was wrong in allowing this case to proceed? And really, all I hear are fact issues and fact questions. Well, I guess that in my thought offhand, the closest would be Stinson, as to whether there's deliberate, any subjective proof of his knowledge that would put him on notice that there was a risk of harm to Horvath. As I understand it, Stinson didn't even know that Horvath had a roommate or a cellmate. Judge, you hit it right on the head when you were talking to Mr. Thomas. I agree with that. And that whole encounter outside, whether he's going to go to the doctor or he's going to go home in a day, that's all irrelevant. There is evidence, for purposes of the summary judgment motion, that there was a lot of noise. It doesn't have anything to do with whether he knew Horvath had a roommate or whatever. He's a deputy in the Wayne County Jail. When there's loud noise in some of the things that you referred to that's in the record, you're supposed to do something. You're supposed to get up out of your station or call somebody and go see about it. And that's a fact question. They may be able to argue, we got 26 witnesses that said nobody made any noise at all. But for right now, the record that we have right now, we've got evidence in the record that there were all this noise. And that's our position. It's not what he knew beforehand. We're not saying that Stinson was like Cameron, where he had all this information, et cetera, and so forth. We're not saying that at all. We're saying from the time the noise, and what obviously we now know was the fatal beating, from the time that that started, there were sufficient indicia, noise, banging, whatever it is, get me out of here, let me out, that's enough to cause him to have to have come out and seen about it. And it's a question of fact whether that constitutes deliberate indifference. And that's something that we're not going to decide here. Judge Hood wasn't supposed to decide either. But she did make findings in her opinion about the things that you mentioned. The noise, the rattling of the bars, let me out, let me out, I'll kill you. I mean, she mentioned them, she referenced them, and that's sufficient, I say, to get past summary judgment. Is there a 10-minute gap or not from the time that... You know, that's a great question. When Mr. Thomas answered your question and started to give his explanation, that to me is going to be one of the big questions of fact. Is there a 10-minute gap or not? All the deps will be able to come in and say whatever they say. And Nurse Williams will say whatever she says. And we'll present whatever we have. But I don't think that 10-minute gap for right now, for purposes of summary judgment, matters. It's another question of fact. And that's, I just don't know how else to say it. It's something that will have to come out, and we'll find out. And a jury will, or perhaps, perhaps, it comes out in a way that's completely favorable to the defense at the trial. And then Judge Hood says, I'm granting a summary judgment as to Officer Stinson. Because now I've heard all of these other facts, and I don't find that there was, maybe a 10-minute gap will be very significant to her. But for right now, for what we have right now, you know, we can't say. I gather as to Nurse Williams, you would say, well, we don't know that she was aware of anything, except that there were people that say, well, they were aware of stuff, and she was on the ward at the time. I would say it's essentially the same discussion with respect to her. It's the noise factor and the banging and whatever it was that went on. And what we have right now is enough to get past summary judgment. Whether it will get past, I'm sorry, did I, yeah, summary judgment there. Whether it will get past, I get confused with criminal cases. We don't have summary judgments in criminal cases. Whether it will get past the summary judgment once the plaintiff's case is put on, who knows. But for here, for right here, there's nothing about Judge Hood's opinion. I use it as an example. I think it's the Scott case, I forget Scott versus who, but Scott versus somebody, where they talked about blatantly false evidence being considered down at the trial level. And that's the only time that the appellate court's supposed to really turn around her facts. And, of course, in that case, they had a video. The guy claimed he was driving perfect, and they had a video. I think they said in the opinion they referenced it to a Hollywood car chase. Well, that's blatantly false evidence. We don't have anything like that here. All we have is different things that different people say. I did want to talk briefly about the county. Sure. The 1983 cases with deliberate indifference has the subjective component. And the hardest thing of these cases is everybody wants to argue negligence. What should have been done? What reasonable person should have been done? That's actually what you were arguing today, mostly. But here you actually have to have evidence that the defendants subjectively knew of the risk of harm and failed to act. And my question is, I mean, you say that's a jury question routinely. I mean, negligence normally is a jury question. But a subjective knowledge of the risk of harm may or may not be. Are you talking about Stinson and Williams? That's the two you're concerned with? I would say that when something is subjective, and I think that's what that Farmer case recognized, subjective means it's not objectively obvious. Subjective means what's in somebody's mind. Agreed? So that's how you're deliberately indifferent as opposed to negligently indifferent. Precisely. And I think you're kind of confusing the two. You're saying they should have done this, they should have done that. No, they had to know of the risk and deliberately not acted. I agree. That's the problem I've got. Okay, but I hear what you're saying, and I'm not trying to say this is a negligence case. It's not. I agree with you. What I'm saying is that at a point in time, and maybe the 10 minutes will become a big deal when there's a trial, at a point in time they were on notice that something bad was happening, and they were deliberately indifferent, we can argue, based on what's in the record right now. And Judge Hood talked about that in her opinion. What's in the record right now, if it turns out to be true, and right now this is the record, that they're banging on the bars and they're screaming, let me out, and he's saying all the other things that we have contained in the brief, if those things are proven, and right now that's the evidence, then I believe we could make a very strong argument that they became deliberately indifferent, even if they only became deliberately indifferent the minute they heard that. That's why it doesn't matter to me, and I don't think it should matter to you, what happened earlier, you know, whether or not Stinson talked to Horvath and Horvath didn't want to go to the doctor, that's irrelevant. What matters is when the deliberate indifference comes in, and I think Judge Hood recognized this, and I think that the, there's one with an F for it, but whatever the case is, it talks about deliberate indifference being subjective, and you can get it from circumstantial evidence, and we have that here. That's all I'm saying. If I gave you the impression I thought this was a negligence case or that that was sufficient, then I apologize because I don't. That's always the hardest element of proof. I agree. Proving the subjective component, because you have the objective and the subjective. You certainly have the objective. There's no doubt about that. But the subjective component, is there enough for a jury, a reasonable jury, to conclude based upon all the evidence, or is the jury basically left to guess or without a basis to discredit the testimony? And I think what you just said, if you are the trial judge in this case, like Judge Hood will be assuming that the case goes, then she may make that finding after she's heard testimony. Qualified immunity, we have a role up here. Qualified immunity is, one of the functions is to prevent the defendants from going through the trial process, and we have kind of a gatekeeper function in qualified immunity cases, so they don't have to go through the expense of regular trials that other claims would. But I understand that. But from what I understand about the law, from what I understand at this stage, where the denial of a summary judgment motion before the trial starts, I understand about the law that as long as the judge made factual findings, which she did. Factual findings on summary judgment? Well, I'm sorry, I don't mean the phrase factual findings. We accept the facts in the light most favorable to the non-moving party, which is you. And she gave an interpretation of it, and she said that therefore she believed it was a question of fact as to whether Nat Stinson and Williams were deliberately indifferent. That's really all I can say. We're trying to determine whether that's a legally correct ruling or not. Yeah, no, I understand that. Of course, our review is de novo, isn't it? Your review of the law is de novo. I don't think your review of the... The review of the ruling and what happened below, the granting of qualified immunity, our review of that is de novo, isn't it? The law, I agree it's de novo, but I think not the facts. I think the facts, I think what Plumhoff says is that it's entitled to deference, that which the trial judge found. I don't think it's... I mean, it's definitely de novo with respect to the law. There's no doubt about that. But I don't believe that you have a de novo review. I don't think you're starting with a de novo review. I don't think that's what the Supreme Court said in Plumhoff. Normally, a trial judge doesn't make findings of fact on summary judgment. If they're genuine issues of material fact, I mean, they're... I withdraw that phrase of findings of fact, okay? I mean, what she did say was she cited to facts and cited to inferences that from which could be found deliberative. And they can't make a factual dispute on appeal. We have to consider the facts in the light most favorable to you on this. Okay. I just want to talk about the county. Yeah, we could talk about the Tigers. I'll talk about the county instead of the Tigers. The county, I just want to emphasize what her ruling was. And her ruling was that Larry Cameron's testimony, really standing alone, was enough to hold the county in. Because Larry Cameron in his deposition said something very interesting. He could have said, I didn't, I stopped. I looked at the MHWIN. I saw the 2300 and some contacts. I saw all the other things. And I didn't do it because I didn't feel like it. And he could have taken all the weight himself. But he didn't say that. What he said was, and what the judge based her ruling keeping the county in on, was I didn't go any further because the policy is you don't have to go any further. And she found that to be a de facto policy, even though, you know, ordinarily it's a policy, it's written down, you've got to do this, you've got to do that, you've got to do this, you've got to do that. But he said his testimony was, and maybe they'll come up with other witnesses at the trial to say he's wrong, but he said that it was their policy that you didn't have to go any further. And Judge Hood found that to be a de facto policy of the county and that that contributed to what eventually happened to Mr. Horvath. And I kind of think that seemed pretty correct to me. I mean, he put it on the county himself. Nobody made him. It was his deposition. And once he said that, I think she was correct for purposes of summary judgment to say that that leaves the county in because it is a de facto policy telling them don't go further. And then those questions you were asking Mr. Thomas about, boy, there were an awful lot of things about Mr. Gillespie. If he'd have gone a little bit further, maybe he'd have known a little bit more, right? And he chose not to, but he chose not to based on the policy of the county. And I got done just as soon as the clock got done, so that's pretty good. Thank you. Thank you, Your Honors. I'd like to just briefly respond with respect to Wayne County and the municipal policy. Larry Cameron did not say that the policy, that the Wayne County policy said, I don't have to review medical records, and he did not say the Wayne County policy says I don't have to review MH-1. He was asked, for purposes of completing the mental stat examination, do you need to consult the MH-1 system? And beyond determining that an inmate is a mental health consumer, he said I don't have to look at MH-1 any further. But I want to just direct you to something. I'm following you. In not going further and delving into these over 2,000 mental health encounters or whatever else was shown on that system, in failing to investigate further was he following the policies and procedures of Wayne County or not? There is no specific policy about looking into the MH-1 system because MH-1 is not a Wayne County jail system. He has very limited access to the system. He can input that, hey, look, on such and such a day I did a mental stat examination, but what he cannot do is go further and look at records. He does not have that capability. And I would just ask the court. I thought the record indicated that he could obtain some additional information and he could have done that had he chosen. Is that right? That is true. And I would just direct the court to pages 1-6. The decision not to do that was in conformity with the county's practice and policies. Judge, if I can just point you to. That's not correct. That's incorrect, Judge. And I'll just point you to record entry 4725, pages 983 through 995. It says explicitly in the policies that if an inmate is in the jail previously and that inmate has a previous mental health record, that the medical professional is to consult those records three or four times in the policy. It says that. So he never testified that it was Wayne County policy not to review the MH-1 records or any mental health records. What he said was for purposes of him completing his portion of the intake, he did not have to go beyond confirming that Mr. Gillespie was a consumer in the MH-1 system. That's all he said. And I would just direct the court to page. Because he's a fairly low-level employee there at the jail, so maybe he wouldn't be the best person to say defensively what the county's policy was in that regard. Isn't the nature and extent of the policy really somewhat a factual matter that's in dispute here? No, I don't think so, Judge, because to the extent the district court judge said that Wayne County had a de facto policy of not requiring review of past medical records, that was blatantly contradicted by the record. Who said that, the statement you just made? That was in Judge Hood's opinion at page 11. Well, the judge is not a witness, though, in the case. Where did she get the information? That was her conclusion. That was her conclusion. She said that defendant Wayne County had a de facto policy of not requiring a review of readily available prior mental health records, including the MH-1 records. That was her determination. That was the court's determination, Judge. All right. In view of the facts most favorable to plaintiff, there's a genuine issue of material fact as to whether they had that policy, right? That's what she found. Well, I think what she said was whether there's a genuine issue of fact as whether there needed to be further investigation. And, again, in the absence of objective information that there was some likelihood or knowledge on the part of Mr. Cameron that Mr. Gillespie would be assaulted, I don't know that there is that duty to do that further investigation. All right. You might want to wrap up. Your red light's been on for a while. Certainly. Thank you, Your Honor. Again, I would request, and certainly it's been fully briefed in the briefs, Judge, I just ask the court to look at the specific legal determinations as to the district court's legal determinations, and we'd ask that her decision be reversed. Thank you. All right. Thank you very much. Thank you. Case is submitted.